UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
RAFAEL NERIS-MARIA,                          :
                                             :
                    Petitioner,              :
                                             :
             -against-                       :   09 Civ. 625 (PAC)(THK)
                                             :
                                             :   **REPORT AND RECOMMENDATION**
                                             :
ANDREA QUARANTILLO,                          :           **Pro Se**
                                             :
                                             :
                    Respondent.              :
------------------------------------X

**TO: HON. PAUL A. CROTTY, UNITED STATES DISTRICT JUDGE**
**FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE**

Petitioner Rafael Neris-Maria ("Petitioner" or "Neris-Maria"), formerly in the custody of the Bureau of Immigration and Customs Enforcement ("ICE") at the Monmouth County Correctional Facility in Freehold, New Jersey, brought this action seeking (1) a writ of habeas corpus releasing him from detention, and (2) the grant of his application for naturalization. Petitioner has since been deported to his country of origin, the Dominican Republic.

Respondent Andrea Quarantillo ("Respondent"), District Director of the New York City District Office of United States Citizenship and Immigration Services ("USCIS"), argues, among other things, that Petitioner's request for release has been rendered moot by his removal from the United States, and that this Court lacks jurisdiction over the petition for naturalization. For the reasons that follow, I recommend that the Petition be denied and this action be dismissed with prejudice.

1

COPIES MAILED
TO COUNSEL OF RECORD ON 12/16/09

**BACKGROUND**

Petitioner is a native and citizen of the Dominican Republic. He was admitted to the United States as a Lawful Permanent Resident on February 14, 1981.  (See Immigrant Visa and Alien Registration, dated Feb. 14, 1981, attached to Respondent's Return ("Return") as Exhibit ("Ex.") 1.)

In the mid-1980s, Petitioner was arrested twice, first in November of 1985, and then in May of 1986, after undercover officers witnessed him selling heroin.  (See In the Matter of Neris-Maria, Return Ex. 6 at 10-11.)  Both times, he was found to have a quantity of cash and several packets of heroin in his possession.  (See id.)  Petitioner pleaded guilty to Criminal Sale of a Controlled Substance in the Third Degree and Criminal Possession of a Controlled Substance in the Third Degree on March 12, 1987.  (See Orders of Hon. William G. Giaccio, Justice of the New York State Supreme Court, Return Ex. 2 at 15-22 (accepting guilty pleas from Petitioner).)  Petitioner was sentenced to concurrent terms of one to three years' imprisonment, and served one year before being released. (See Return Ex. 6 at 4.)  After his release, he continued to live in New York.

A. Removal Proceedings

In 1998, Petitioner traveled abroad.  When he attempted to re-enter the United States, the Immigration and Naturalization Service

("INS") refused to admit him, and placed him in removal proceedings. Petitioner was charged with being an arriving alien who was inadmissible to the United States, due to his prior criminal convictions for possession and sale of a controlled substance. (See Notice to Appear, dated Jan. 13, 1998, Return Ex. 3.)

On June 24, 1998, New York Immigration Judge Jeffrey S. Chase ("IJ Chase") found that the charges of inadmissibility were supported by "clear and convincing evidence," and ordered Petitioner removed from the United States as a former trafficker in a controlled substance. (See Summary of Decision, dated June 24, 1998, Return Ex. 4.) However, IJ Chase failed to issue a full oral decision in the presence of the parties, and so, on Petitioner's appeal, the Board of Immigration Appeals ("BIA") reversed the decision and remanded the case for further proceedings. (See Decision of the Board of Immigration Appeals, In Re Rafael Neris-Maria, dated Apr. 11, 2002, Return Ex. 5.)

On remand, IJ Chase issued a detailed opinion finding that Neris-Maria was removable, and that he did not merit a discretionary waiver of removal under former Section 212(c) of the Immigration and Nationality Act ("INA").[1]   (See Decision, dated July 22, 2003,

_____

    [1] The ability to grant discretionary waivers of removal was substantially restricted by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). However, in INS v. St. Cyr, 533 U.S. 289, 326, 121 S. Ct. 2271, 2293 (2001), the Supreme Court held that AEDPA and IIRIRA did not have retroactive effect, so aliens who pled guilty to or were

Return Ex. 6.)

Petitioner appealed to the BIA, which affirmed IJ Chase's decision without opinion. (See Decision of the Board of Immigration Appeals, In Re Rafael Neris-Maria, dated Sept. 8, 2004, Return Ex. 7.) Between October of 2004 and December of 2008, Petitioner filed four motions to reopen and one motion to reconsider with the BIA, but all were denied. (See Decisions of the Board of Immigration Appeals, dated Oct. 22, 2004, Feb. 3, 2005, Apr. 23, 2007, Oct. 8, 2008, and Dec. 24, 2008, Return Ex. 8.) On January 5, 2009, Petitioner filed a final motion to reopen, (see Return Ex. 9), which remains pending before the BIA (see Return ¶ 9).

During that same period, Petitioner simultaneously pursued relief in the federal courts. On November 2, 2004, he filed a petition for a writ of habeas corpus in the Eastern District of New York, challenging the BIA's September 8, 2004 decision upholding the order of removal, and its October 22, 2004 decision denying his motion to reconsider. (See Return ¶ 10.) The District Court found that the REAL ID Act had divested it of jurisdiction over challenges to removal orders, and transferred the petition to the Second Circuit for review. (See Memorandum and Order, Case No. 04 Civ. 4834 (FB), dated Jan. 3, 2006, Return Ex. 11.) However, Neris-Maria

---

convicted of crimes before those laws took effect were still eligible for § 212(c) relief. Neris-Maria, who pled guilty to the charges of drug sale and possession in 1987, was therefore eligible to apply for discretionary relief from removal.

defaulted before the Second Circuit, and his petition was dismissed on October 4, 2006.  (See Return Ex. 12.)  On May 8, 2007, Petitioner filed a new appeal with the Second Circuit, which was denied on the merits on April 23, 2008.  See Neris-Maria v. Mukasey, 274 Fed. Appx. 69 (2d Cir. 2008).

B. Application for Naturalization

Petitioner filed an application for naturalization on November 28, 2007.  In it, he listed his two criminal convictions, but checked "no" in response to the question "Have you ever sold or smuggled controlled substances, illegal drugs, or narcotics?"  (See Petitioner's Application for Naturalization, Return Ex. 14 at 8.) He answered "yes" when asked whether removal proceedings were currently pending against him, and if he had ever been ordered removed from the United States.  (See id. at 9.)  However, Petitioner claimed to be entitled to naturalization because of his "more than 20 years of good moral character to date." (See id. at 1.)

On October 7, 2008, Petitioner had a naturalization interview with USCIS Officer Ryan C. Smith.  (See N-652 Naturalization Interview Results, dated Oct. 7, 2008, Return Ex. 15 at 2.)  Smith notified Petitioner that he had passed the English test required for naturalization, and instructed him to wait for USCIS's decision on his naturalization application to arrive by mail.  (See id.)  On December 12, 2008, USCIS found Petitioner ineligible for

naturalization because of the removal proceedings pending against him, and denied his application.  (See Decision on Application for Naturalization, dated Dec. 12, 2008, Return Ex. 17 at 1-2.)

C.  Detention and Removal

On December 3, 2008, ICE issued a warrant authorizing any ICE officer to remove Neris-Maria from the United States.  (See Warrant of Removal/Deportation, dated Dec. 3, 2008, Return Ex. 18.)   On December 12, 2008, Petitioner was taken into custody and placed in immigration detention at the Monmouth County Correctional Facility in Freehold, New Jersey.  (See Petition at 1; Return ¶ 15.)   On December 15, 2008, while still in detention, Petitioner filed the instant petition for a writ of habeas corpus and "determination of citizenship rights."[2]   (See Petition.)  On January 5, 2009, Petitioner was removed from the United States to the Dominican Republic.  (See Removal Verification Form, dated Jan. 5, 2009, Return Ex. 18.)

## DISCUSSION

Petitioner makes two claims.  First, he challenges his detention, arguing that he merits release from custody because of his record of good behavior since his release from prison fifteen

---

[2]  The Petition was received by this Court's Pro Se Office on December 16, 2008.  However, it was not docketed until January 22, 2009.  According to Respondent's counsel, Respondent did not become aware of the Petition until February 20, 2009. (See Respondent's Memorandum in Opposition to Petition for Writ of Habeas Corpus ("Resp't Mem.") at 5.)

years ago, his medical needs, and his family's willingness to cover the costs of an electronic monitoring bracelet.  (See Petition at 1-2.)  Second, he requests that the Court grant his application for naturalization.[3] (See Petition at 2.)

Respondent opposes the Petition.  As to the detention claim, she argues that Petitioner filed his habeas petition in the wrong court, because he was detained in Monmouth County, New Jersey.  She further argues that Petitioner failed to name a necessary respondent, the warden of the facility where Petitioner was detained. (See Resp't Mem. at 5-6.)   In any event, Respondent argues, the Petition is now moot because Petitioner was released from detention when he was removed from the United States.  (See id. at 6-7.)  As to the naturalization claim, Respondent contends that

---

[3] Petitioner has styled his Petition as one for habeas corpus relief, under the "All Writs Act, 28 USC 1446" and for adjudication of naturalization "after ten years good moral character" under the case Lora v. USCIS, 05 Civ. 4083, 2007 WL 1150155 (E.D.N.Y. Apr. 18, 2007).  However, 28 U.S.C. § 1446 is not the All Writs Act – that statute is 28 U.S.C. § 1651 – and habeas challenges to immigration detention are properly brought under 28 U.S.C. 2241. See Zadvydas v. Davis,533 U.S. 678, 687, 121 S. Ct. 2491, 2497 (2001); Henderson v. INS, 157 F.3d 106, 109 (2d Cir. 1998).  Therefore, the Court construes Neris-Maria's detention challenge as a claim for a writ of habeas corpus under 28 U.S.C. § 2241.  Likewise, the Lora case does not grant this Court jurisdiction to review Petitioner's naturalization claim. Federal courts have jurisdiction to review naturalization petitions in only three circumstances: (1) delay, under 8 U.S.C. § 1447(b); (2) denial, under 8 U.S.C. 1421(c); and (3) mandamus, under 28 U.S.C. § 1361.  See Escaler v. USCIS, 582 F. 3d 288, 291 (2d Cir. 2009). Therefore, the Court will construe Neris-Maria's claim for naturalization as a petition for relief under those statutes, rather than under Lora.

this Court lacks jurisdiction to review it, (see id. at 7-8), and that Petitioner is ineligible for naturalization because of the removal proceedings against him (see id. at 9-11).

I. <u>Petitioner's Habeas Challenge to His Detention</u>

Petitioner requests release from detention, arguing that he has demonstrated fifteen years of good conduct and so is not a social threat, (see Petition at 1), that he is in poor health and needs significant medical care, (see id.), and that his family is willing to pay the costs of electronic monitoring if he is released under supervision (see id. at 2).[4]

A habeas petition, like any other federal action, must present a live "case or controversy" in order to be reviewable by a federal court.  See U.S. Const. art. III, § 2; <u>U.S. Parole Comm'n v. Garaghty</u>, 445 U.S. 388, 395-96 100 S. Ct. 1202, 1208 (1980); <u>Green v. Mazzucca</u>, 377 F.3d 182, 182 (2d Cir. 2004) (per curiam).  To satisfy that requirement, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the respondent, and likely to be redressed by a favorable judicial decision."  <u>Swaby v. Ashcroft</u>, 357 F. 3d 144, 160 (2d Cir. 2004) (quoting <u>Spencer v. Kemna</u>, 523 U.S. 1, 7, 118 S. Ct. 978, 983 (1998)).  Therefore, if a habeas petitioner challenging his detention is released before his

_____

[4] Petitioner also claims that his naturalization application was approved on October 7, 2008, and that he was "waiting for the notice to take the oath of naturalization" when he was placed in immigration detention, (see id.), but that is incorrect; his naturalization application was denied on December 12, 2008. (See Return Ex. 17.)

8

claim is decided, he must demonstrate that the court can still redress a "concrete and continuing injury" that is a "collateral consequence" of the detention, to prevent the dismissal of the petition as moot. See Kamagate v. Ashcroft, 385 F. 3d 144, 150 (2d Cir. 2004) (citing Swaby, 357 F. 3d at 160 (quoting Spencer, 523 U.S. at 7, 117 S. Ct. at 983)). See also Gonzalez v. INS, No. 01 Civ. 6229 (HB), 2002 WL 31444952, at * 3 (S.D.N.Y. Oct. 31, 2002); So v. Reno, 251 F. Supp. 2d 1112, 1120-21 (E.D.N.Y. 2003).

In his claim for habeas relief, Petitioner challenges only his physical confinement, and seeks no relief other than a release from custody. (See Petition at 1-2.)   Petitioner was released from detention on January 12, 2009, when the Department of Homeland Security had him removed to the Dominican Republic.   (See ICE Departure Verification Form, dated Jan. 12, 2009, Return Ex. 18.) He has not alleged that any "continuing injury" persists after his release from custody; therefore, nothing remains that could be redressed by a favorable judicial decision.   (Petitioner's naturalization claim is distinct from his detention claim, and, in any case, it does not describe any ongoing injury that was a "collateral consequence" of his pre-removal detention.) Petitioner's detention claim is therefore moot.

Because Petitioner's habeas claim is moot, there is no need to address Respondent's argument that Petitioner has filed his claim in the wrong court, with the wrong individual named as a respondent.

II.   <u>Petitioner's Application for Naturalization</u>

Petitioner requests that the Court grant his application for naturalization, claiming that "[a]nother national of the Dominican Republic was granted his naturalization and he did not face removal or deportation proceedings." (Petition at 2 (citing <u>Lora v. USCIS</u>, 2007 WL 1150155).)   Respondent argues, first, that the Court lacks jurisdiction over Petitioner's application, (<u>see</u> Resp't Mem. at 7-9), and, second, that Petitioner is ineligible for naturalization because of the removal proceedings against him (<u>see</u> <u>id.</u> at 9-11).

Congress has conferred "sole authority to naturalize persons as citizens of the United States" on the Attorney General.   8 U.S.C. § 1421(a).   Federal courts have jurisdiction to review the Attorney General's naturalization decisions in only three limited circumstances.   <u>See</u> <u>Escaler v. USCIS</u>, 582 F. 3d 288, 291 (2d Cir. 2009).   The first is delay; if an applicant has not received a decision on his application within 120 days after his naturalization interview, then he may seek a hearing before a district court.   <u>See</u> 8 U.S.C. § 1447(b); <u>Escaler</u>, 582 F.3d at 291.   The second is denial; an applicant whose application has been denied may seek review of that decision by a district court, provided he has first exhausted his administrative remedies.   <u>See</u> 8 U.S.C. § 1421(c); <u>Escaler</u>, 582 F.3d at 291.   The third is mandamus; in "extreme cases," where the Attorney General has failed to perform a clear, nondiscretionary duty, mandamus relief may be available to a naturalization

10

applicant. See Escaler, 582 F.3d at 291 (citing Heckler v. Ringer, 466 U.S. 602, 616, 104 S. Ct. 2013, 2022 (1984)); see also 28 U.S.C. § 1361.

None of those avenues for review is available to Petitioner. There was no undue delay in the decision on his application, and so the Court does not have jurisdiction under 8 U.S.C. § 1447(b). Petitioner had his naturalization interview on October 7, 2008, and USCIS denied his application 66 days later, on December 12, 2008 – far short of the 120-day delay required for federal court review under § 1447(b).

The Court also lacks jurisdiction to review the denial of Petitioner's naturalization application under § 1421(c), because he failed to properly exhaust his administrative remedies, as the statute requires. See 8 U.S.C. 1421(c) ("A person whose application for naturalization under this subchapter is denied, *after a hearing before an immigration officer under section 1447(a) of this Title*, may seek review of such denial before the United States district court for the district in which such person resides")(emphasis added); Escaler, 582 F.3d at 292; see also Baez-Fernandez v. INS, 385 F. Supp. 2d 292, 294-95 (S.D.N.Y. 2005); Kyung Sook Oh v. Keisler, No. 08 Civ. 3204 (RJD), 2009 WL 3711540, at *1-3 (E.D.N.Y. Oct. 8, 2009); Gorokhovskaya v. Dep't of Homeland Security, No. 3:07 Civ. 01547 (VLB), 2008 WL 4735142, at *1-2 (D. Conn. Oct. 28, 2008). The exhaustion requirement is mandatory, and not subject to judicial

discretion.  See Escaler, 582 F.3d at 292 (citing Bastek v. Fed.
Crop. Ins. Corp., 145 F. 3d 90, 94 (2d Cir. 1998)).  Here,
Petitioner did not request or receive a § 1447(a) hearing subsequent
to the December 12, 2008 denial of his application.[5]  Because
Petitioner did not exhaust his administrative remedies, § 1421(c)
does not provide this Court with jurisdiction to review his
naturalization claim.

Petitioner's failure to exhaust his remedies also forecloses
mandamus relief.  "Issuance of a writ of mandamus under 28 U.S.C.
1361 is generally dependent upon exhaustion of other available
remedies."  Escaler, 582 F.3d at 292 (citing Heckler, 466 U.S. at
616, 104 S. Ct. at 2022).  Moreover, mandamus relief would only be
available if the Attorney General had a "clear, nondiscretionary
duty" to naturalize Petitioner.  See id.  Here, however, the
opposite is true: the Attorney General may not naturalize any alien
who is the subject of pending removal proceedings or a final order
of removal, see 8 U.S.C. § 1429, and, thus, he was barred from
approving Petitioner's application because he was the subject of
removal proceedings.

This Court, therefore, lacks jurisdiction to review
Petitioner's naturalization claim.

---

[5] Petitioner attached documents to his Petition showing a §
1447(a) appeal of a 1996 naturalization denial. (See Petition
Ex. 3.) However, the exhaustion of remedies on that previous
application does not give the Court jurisdiction to review the
denial of a subsequent, unexhausted naturalization application.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Petition for habeas relief and application for naturalization be dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6(a) and (d).  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Paul A. Crotty, U.S.D.J., and to the chambers of the undersigned, Room 1660.  Any requests for an extension of time for filing objections must be directed to Judge Crotty.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  See Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002); Spence v. Sup't., 219 F.3d 162, 174 (2d Cir. 2000).

Respectfully submitted,

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: December 16, 2009
       New York, New York

13

Copies sent to:

Rafael Neris-Maria
50-14 101 Street,
2nd floor
Corona, NY 11368

Sue Chen
Assistant United States Attorney
86 Chambers Street
New York, NY 10007

14